John T. Jasnoch (CA 281605)
jjasnoch@scott-scott.com
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-233-0508

*Attorney for Lead Plaintiff Movant The Safemoon Investor Group*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BILL MEREWHUADER, CHRISTOPHER POLITE, and TIM VIANE, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

SAFEMOON LLC, SAFEMOON US, LLC, SAFEMOON CONNECT, LLC, SAFEMOON LTD, SAFEMOON PROTL LTD, SAFEMOON MEDIA GROUP LTD, BRADEN JOHN KARONY, JACK HAINES-DAIVE, RYAN ARRIAGA, SHAUN WITRIOL, HENRY "HANK" WYATT, JAKE PAUL, NICK CARTER, DeANDRE CORTEZ WAY, BENE PHILLIPS, and MILES PARKS McCOLLUM,

Defendants.

Case No. 2:22-cv-01108-SVW-MRW

**MEMORANDUM IN SUPPORT OF THE SAFEMOON INVESTOR GROUP'S MOTION FOR (1) CONSOLIDATION OF RELATED ACTIONS; (2) APPOINTMENT AS CO-LEAD PLAINTIFFS FOR SECURITIES CLAIMS; (3) APPROVAL OF SELECTION OF LEAD COUNSEL FOR SECURITIES CLAIMS; (4) APPOINTMENT OF LEAD COUNSEL FOR NON-SECURITIES CLAIMS**

Judge: Stephen V. Wilson
Date: June 13, 2022
Time: 1:30 p.m.
Courtroom 10A

*Caption Continued on Following Page.*

MEMORANDUM IN SUPPORT OF MOTION FOR CONSOLIDATION; APPOINTMENT OF CO-LEAD PLAINTIFFS AND LEAD COUNSEL
CASE NOS. 2:22-cv-01108-SVW-MRW; 2:22-CV-01527-SVW-MAR

| | |
|---|---|
| KAYLA BLACKSHER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SAFEMOON LLC, SAFEMOON US, LLC, SAFEMOON CONNECT, LLC, TANO LLC, SAFEMOON LTD, SAFEMOON PROTOCOL LTD, SAFEMOON MEDIA GROUP LTD, BRADEN JOHN KARONY, JACK HAINES-DAVIES, RYAN ARRIAGA, SHAUN WITRIOL, HENRY "HANK" WYATT, THOMAS SMITH, KYLE NAGY, JAKE PAUL, NICK CARTER, DeANDRE CORTEZ WAY, BEN PHILLIPS, MILES PARKS McCOLLUM, and DANIEL M. KEEM,<br><br>Defendants. | Case No. 2:22-cv-01527-SVW-MAR |

MEMORANDUM IN SUPPORT OF MOTION FOR CONSOLIDATION; APPOINTMENT OF CO-LEAD PLAINTIFFS AND LEAD COUNSEL
CASE NOS. 2:22-cv-01108-SVW-MRW; 2:22-CV-01527-SVW-MAR

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES TO BE DECIDED .......... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

III. ARGUMENT .......... 4

A. The *Merewhauder* Action and the *Blacksher* Action Should Be Consolidated .......... 4

B. The Safemoon Investor Group Should Be Appointed Lead Plaintiffs for the Securities Claims .......... 4

1. The Safemoon Investor Group's Motion Is Timely .......... 4

2. The Safemoon Investor Group Has the Largest Financial Stake in the Relief Sought by the Class .......... 5

3. The Safemoon Investor Group Are Otherwise Qualified Under Rule 23 .......... 6

4. The Court Should Approve the Safemoon Investor Group's Choice of Counsel .......... 8

5. Scott+Scott Should Be Appointed as Lead Counsel over the Non-Securities Claims .......... 10

IV. CONCLUSION .......... 12

i

MEMORANDUM IN SUPPORT OF MOTION FOR CONSOLIDATION; APPOINTMENT OF CO-LEAD PLAINTIFFS AND LEAD COUNSEL
CASE NOS. 2:22-cv-01108-SVW-MRW; 2:22-CV-01527-SVW-MAR

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Feyko v. Yuhe Int'l Inc.*,
No. CV 11-05511, 2012 WL 682882 (C.D. Cal. Mar. 2, 2012) .......................... 5

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .......................... 2, 8, 9

*In re Cohen*,
586 F.3d 703 (9th Cir. 2009) .......................... 8

*In re Facebook, Inc., IPO Sec. and Deriv. Litig.*,
288 F.R.D. 26 (S.D.N.Y. 2012) .......................... 10

*In re Interest Rate Swaps Antitrust Litig.*,
No. 16-MD-2704, 2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016) .......................... 11

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) .......................... 6

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
No. 13-CV-05368, 2014 WL 2604991 (N.D. Cal. June 10, 2014) .......................... 5

*Richardson v. TVIA, Inc.*,
No. C 06 06304, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .......................... 5, 6

*Russo v. Finisair Corp.*,
No. 5-CV-11-01252, 2011 WL 5117560 (N.D. Cal. Oct. 27, 2011) .......................... 7

*Westley v. Oclaro, Inc.*,
No. C-11-2448 EMC, 2011 WL 4079178 (N.D. Cal. Sept. 12, 2011) .......................... 7, 8

ii

MEMORANDUM IN SUPPORT OF MOTION FOR CONSOLIDATION; APPOINTMENT OF CO-LEAD PLAINTIFFS AND LEAD COUNSEL
CASE NOS. 2:22-cv-01108-SVW-MRW; 2:22-CV-01527-SVW-MAR

**Statutes, Rules, and Regulations**

15 U.S.C.
§77z-1(a)(3)(A)(i)(II) .......... 5
§77z-1(a)(3)(A)-(B) .......... 5
§77z-1(a)(3)(B)(iii)(II)(aa) .......... 8
§77z-1(a)(3)(B)(v) .......... 8
§78u-4(a)(3)(A)(i) .......... 4
§78u-4(a)(3)(B) .......... 1, 6
§78u-4(a)(3)(B)(i) .......... 5
§78u-4(a)(3)(B)(iii) .......... 1, 2
§78u-4(a)(3)(B)(iii)(I)(bb) .......... 5
§78u-4(a)(3)(B)(iii)(I)(cc) .......... 6
§78u-4(a)(3)(B)(v) .......... 1, 2

Federal Rules of Civil Procedure
Rule 23 .......... 1, 6, 7, 8
Rule 23(a) .......... 6, 7
Rule 23(a)(3) .......... 7
Rule 23(g)(1)(A) .......... 10
Rule 42(a)(2) .......... 4

California Civil Code
§1770 .......... 2

California Business & Professions Code
§17200 .......... 2

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION, (Fourth)
§10.221 .......... 10
§10.224 .......... 10

NEWBERG ON CLASS ACTIONS
§3:13 (4th ed. 2008) .......... 7

iii

MEMORANDUM IN SUPPORT OF MOTION FOR CONSOLIDATION; APPOINTMENT OF CO-LEAD PLAINTIFFS AND LEAD COUNSEL
CASE NOS. 2:22-cv-01108-SVW-MRW; 2:22-CV-01527-SVW-MAR

# STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether the Court should consolidate the *Merewhauder* and *Blacksher* actions (defined below);

2. Whether the Court should appoint the Safemoon Investor Group as Co-Lead Plaintiffs for the securities claims pursuant to 15 U.S.C. §78u-4(a)(3)(B);

3. Whether the Court should approve the Safemoon Investor Group's selection of Scott+Scott as Lead Counsel for the securities claims pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v); and

4. Whether the Court should appoint Scott+Scott as Lead Counsel for the non-securities claims.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Safemoon Investor Group, by and through their undersigned counsel, respectfully submit this memorandum of points and authorities in support of their motion for: (1) consolidation of the related *Merewhauder* and *Blacksher* actions;[1] (2) appointment as Co-Lead Plaintiffs pursuant to §21D of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the PSLRA; and (3) approval of their selection of Scott+Scott to serve as Lead Counsel for the securities claims; and (4) appointment of Scott+Scott to serve as Lead Counsel for the non-securities claims.

The PSLRA provides that the court is to appoint as lead plaintiff the member or members of the purported plaintiff class with the largest financial interest in the action that otherwise satisfies the requirements of Rule 23. 15 U.S.C. §78u-4(a)(3)(B)(iii). As demonstrated below, The Safemoon Investor Group should be appointed to serve as Co-Lead Plaintiffs for the securities claims because: (1) their

[1] The "*Merewhauder* Action" refers to *Merewhuader v. SafeMoon LLC*, Case No. 2:22-cv-01108. The "*Blacksher* Action" refers to *Blacksher v. SafeMoon LLC*, Case No. 2:22-cv-01527.

motion for appointment is timely filed; (2) based on information presently available, the Safemoon Investor Group has the largest financial interest in this litigation; and (3) they are adequate and typical Class members. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii) (describing the PSLRA standard for lead plaintiff appointment); *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) (same). In addition, the Safemoon Investor Group's selection of Scott+Scott to serve as Lead Counsel for the securities claims should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). Scott+Scott has a long history of successfully litigating securities class actions and possesses the necessary resources to aggressively prosecute this action on behalf of the putative class. In that vein, Scott+Scott should similarly be appointed over the non-securities claims, as they have undertaken significant effort to advance the consumer protection and common law claims asserted against Defendants on behalf of the putative class.

## II.     FACTUAL BACKGROUND

On February 17, 2022, Plaintiffs Bill Merewhauder, Christopher Polite, and Tim Vaine filed a putative class action, captioned *Merewhauder v. SafeMoon LLC* (the "*Merewhauder* Action"), in this District on behalf of all persons, other than Defendants (defined below), who purchased digital assets known as SAFEMOON Tokens from March 8, 2021, through the filing of the complaint. *See Merewhauder* Action, Compl., ¶1. (ECF No. 1). The *Merewhauder* action asserts claims for violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §17200), the California Consumer Legal Remedies Act (Cal. Civil Code §1770), Aiding and Abetting (California Common Law), Illinois Consumer Protection and Deceptive Trade Practices Act (815 Ill. Comp. State. 505/1, *et seq.*), and Unjust Enrichment/Restitution (California Common Law). ¶¶183-220.

The *Merewhauder* action arises from a scheme among various individuals, whereby Defendants misleadingly promoted and sold the SAFEMOON Tokens to unsuspecting investors. Executives with the SafeMoon entity defendants collaborated with the celebrity promotor defendants to make false or misleading statements to investors about SafeMoon through social media advertisements and other promotional activities and disguised their control over SafeMoon and a significant percentage of the SAFEMOON Tokens that were available for public trading. Defendants touted the purported technological innovation of the SAFEMOON Tokens and related cryptocurrency wallet, as well as the ability for investors to make significant returns due to the favorable "tokenomics" of the SAFEMOON Tokens. The misleading promotions were able to artificially increase the interest in and price of the SAFEMOON Tokens, causing investors to purchase the tokens at highly inflated prices.

After the SAFEMOON Token price and trading volume spiked following the celebrity promotions, Defendants began a "slow rug pull" on investors. Defendants deceived investors by encouraging them to purchase the token with promises of future success, while, at the same time, slowly selling off their own holdings as the trading volume from retail investors remained inflated. By December 31, 2021, the price of the SAFEMOON Tokens had dropped over 80% from its height during the Class Period.

On March 7, 2022, Plaintiff Kayla Blacksher filed a putative class action, captioned *Blacksher v. SafeMoon LLC* in this District on behalf of an overlapping class of plaintiffs as the one alleged in the *Merewhauder* Action. The *Blacksher* complaint asserts claims for violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, Section 5, 12(a)(1), and 15 of the Securities Act of 1933, and for aiding and abetting under California Common law.

3

MEMORANDUM IN SUPPORT OF MOTION FOR CONSOLIDATION; APPOINTMENT OF CO-LEAD PLAINTIFFS AND LEAD COUNSEL
CASE NOS. 2:22-cv-01108-SVW-MRW; 2:22-CV-01527-SVW-MAR

The *Blacksher* complaint alleges similar allegations but adds greater detail about the violations of law perpetrated by Defendants. For example, the 97-page *Blacksher* complaint sets forth in extreme detail the undisclosed payments that SafeMoon entities made to celebrity promotors in exchange for shilling the SAFEMOON Token. *See Blacksher* Complaint, ¶¶55-65. The *Blacksher* complaint also alleges that the SafeMoon Defendants committed outright theft under the veneer of a token swap whereby SafeMoon implemented a 100% tax on all sales, purchases, or transfers of SAFEMOON Tokens from one wallet to another. *See Blacksher* Complaint, ¶¶198-219.

## III. ARGUMENT

### A. The *Merewhauder* Action and the *Blacksher* Action Should Be Consolidated

The *Merewhauder* and *Blacksher* actions involve common questions of law and fact and, thus, should be consolidated pursuant to Fed. R. Civ. P. 42(a)(2). Both actions involve the promotion and sale of SafeMoon Tokens by a similar (although not identical) set of defendants on behalf of an overlapping class. Both actions arise from the same set of facts and circumstances. Accordingly, Combs, Northey, and Iacob, collectively as the Safemoon Investor Group, respectfully request that the two actions be consolidated.

### B. The Safemoon Investor Group Should Be Appointed Lead Plaintiffs for the Securities Claims

#### 1. The Safemoon Investor Group's Motion Is Timely

Within 20 days of filing a securities class action, the plaintiff must publish a notice informing putative class members of their right to file a motion for appointment as lead plaintiff (the "Early Notice"). 15 U.S.C. §78u-4(a)(3)(A)(i). Following the commencement of the *Blacksher* Action, on March 8, 2022, Plaintiff Blacksher published notice of pendency of the action via *GLOBE NEWSWIRE*. *See*

Jasnoch Decl., Ex. A. Because the Early Notice was published within 20 days of the initiating *Blacksher* Action, notice was timely. *See Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368, 2014 WL 2604991, at *4 (N.D. Cal. June 10, 2014) (finding notice "timely because it was published within 20 days after the filing of the complaint").

All putative Class members seeking to be appointed lead plaintiff in this matter are required to move for appointment within 60 days of publication of the Early Notice. 15 U.S.C. §77z-1(a)(3)(A)-(B). Since the instant motion was filed within 60 days from the publication of the Early Notice, it is timely. 15 U.S.C. §77z-1(a)(3)(A)(i)(II). Moreover, the Safemoon Investor Group has submitted certifications stating their willingness to serve as representative parties on behalf of the Class. *See* Jasnoch Decl., Ex. B. Likewise, the Safemoon Investor Group has submitted a Joint Declaration stating their willingness and ability to serve as a three-person representative group on behalf of the Class. *See* Jasnoch Decl., Ex. C.

**2. The Safemoon Investor Group Has the Largest Financial Stake in the Relief Sought by the Class**

The PSLRA provides that courts: "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff') in accordance with this subparagraph." 15 U.S.C. §78u-4(a)(3)(B)(i). Furthermore, there is a "rebuttable presumption that the most adequate plaintiff in any private action arising under this [title]" is the movant that "has the largest financial interest in the relief sought by the class[.]" 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); *see also Richardson v. TVIA, Inc.*, No. C 06 06304, 2007 WL 1129344, at *2 (N.D. Cal. Apr. 16, 2007) (discussing the PSLRA lead plaintiff appointment process); *Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511, 2012 WL 682882, at *2 (C.D. Cal. Mar. 2, 2012) (same) (citing *Cavanaugh*,

306 F.3d at 730). "District courts 'have typically considered the Olsten–Lax factors to determine who has the largest financial interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered."' *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998), and *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)). "Of the Olsten-Lax factors, courts consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss." *Richardson*, 2007 WL 1129344, at *4.

Based on the information presently available, the Safemoon Investor Group has the largest financial interest in the relief sought in this litigation. Combs suffered losses of approximately $14,323.11, Northey suffered losses of approximately $178,144.74, and Iacob suffered losses of approximately $16,771.40. *See* Jasnoch Decl., Ex. C. Given that the Safemoon Investor Group has the largest financial interest in this litigation and, as discussed below, satisfy all of the PSLRA prerequisites for appointment as Lead Plaintiffs, they should be appointed Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(3)(B).

#### 3. The Safemoon Investor Group Are Otherwise Qualified Under Rule 23

Pursuant to §21D(a)(3)(B) of the Exchange Act, a proposed lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative

6

MEMORANDUM IN SUPPORT OF MOTION FOR CONSOLIDATION; APPOINTMENT OF CO-LEAD PLAINTIFFS AND LEAD COUNSEL
CASE NOS. 2:22-cv-01108-SVW-MRW; 2:22-CV-01527-SVW-MAR

parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Of the four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the court need only make findings as to the typicality and adequacy of the proposed lead plaintiff and, at this stage, those findings need only be "preliminary." *See, e.g.*, *Westley v. Oclaro, Inc.*, No. C-11-2448 EMC, 2011 WL 4079178, at *2 (N.D. Cal. Sept. 12, 2011) (noting that only a "preliminary showing" of typicality and adequacy satisfies Rule 23 at the lead plaintiff stage).

The typicality requirement of Rule 23(a)(3) is satisfied when the representative party '"has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues.'" *Id.*[2] Here, the Safemoon Investor Group's claims are typical of the claims of the other members of the putative Class because, like all other Class members, the Safemoon Investor Group: (1) purchased SafeMoon Tokens during the Class Period; (2) were adversely affected by Defendants' false and misleading statements and otherwise fraudulent conduct; and (3) suffered damages as a result thereof. *See Russo v. Finisair Corp.*, No. 5-CV-11-01252, 2011 WL 5117560, at *4 (N.D. Cal. Oct. 27, 2011) (discussing ways in which a lead plaintiff movant can meet the typicality requirement). Since the claims asserted by the Safemoon Investor Group are based on the same legal theories and arise "from the same event or practice or course of conduct that gives rise to the claims of other class members," typicality is satisfied. *See* NEWBERG ON CLASS ACTIONS §3:13 (4th ed. 2008).

With respect to adequacy, a movant is an adequate class representative when it possesses common interests and an absence of conflict with fellow class members

[2] Unless otherwise noted, citations are omitted.

and the movant attorneys are qualified, experienced, and vigorously able to conduct the litigation. *See Westley*, 2011 WL 4079178, at *2 (explaining that, with regard to the adequacy requirement, a court must evaluate '"whether: (1) the lead plaintiff's claims conflict with those of the class; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation'"). The Safemoon Investor Group satisfy the "adequacy" requirement in the instant litigation because their interests are clearly aligned with the interests of the putative Class. Moreover, the Safemoon Investor Group, like all other members of the Class, suffered losses as a result of purchasing SafeMoon Tokens at prices that were artificially inflated due to Defendants' alleged fraudulent misconduct. The Safemoon Investor Group will, therefore, benefit from the same relief as other Class members. In short, there is absolutely no evidence of antagonism between the Safemoon Investor Group and the putative Class.

The Safemoon Investor Group have also demonstrated that they are adequate representatives in this matter by having retained competent and experienced counsel. As shown below, Scott+Scott is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Accordingly, the Safemoon Investor Group has made a *prima facie* showing that they satisfy all of the requirements of Rule 23 for the purposes of its motion.

### 4. The Court Should Approve the Safemoon Investor Group's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court approval. *See* 15 U.S.C. §77z-1(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734-35. As such, this Court should not disturb the lead plaintiff choice of counsel unless necessary to "protect the interests of the class[.]" 15 U.S.C. §77z-1(a)(3)(B)(iii)(II)(aa); *see also In re Cohen*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the

district court should generally defer to that choice.") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)); *Cavanaugh*, 306 F.3d at 733 n.12.

The Safemoon Investor Group has selected the law firm of Scott+Scott to serve as Lead Counsel in this litigation. Scott+Scott has significant experience in the prosecution of securities class actions and as its history illustrates, Scott+Scott will vigorously prosecute this case on behalf of the Safemoon Investor Group and the putative Class.[3] Scott+Scott is also currently serving as lead or co-lead counsel in numerous securities class actions pending in several United States District Courts.[4] *See also* Jasnoch Decl., Ex. E (Firm Résumé).

---

[3] Recoveries obtained by Scott+Scott include: *Mustafin v. GreenSky, Inc.*, No. 1:18-cv-11071 (S.D.N.Y.) ($27.5 million); *In re Evoqua Water Techs. Corp. Sec. Litig.*, No. 1:18-cv-10320 (S.D.N.Y.) ($16.65 million); *In re SanDisk LLC Sec. Litig.*, No. 3:15-cv01455 (N.D. Cal.) ($50 million); *Weston v. RCS Cap. Corp.*, No. 1:14-cv-10136 (S.D.N.Y.) ($31 million); *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am., N.A.*, No. 1:12-cv-02865 (S.D.N.Y.) ($69 million); *In re Priceline.com Inc. Sec. Litig.*, No. 3:00-cv-01844 (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, No. 2:99-cv-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Sec. Litig.*, No. 8:01-cv-00219 (C.D. Cal.) ($39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Mo. Cir. Ct., Jackson Cty.) ($50 million); *In re Nw. Corp. Sec. Litig.*, No. 4:03-cv-04049 (D.S.D.) ($61 million); *Irvine v. ImClone Sys., Inc.*, No. 1:02-cv-00109 (S.D.N.Y.) ($75 million); *Schnall v. Annuity & Life Re (Holdings) Ltd.*, No. 3:02-cv-02133 (D. Conn.) ($27 million); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. 2:09-cv-00037 (W.D. Wash.) ($26 million); *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv00548 (S.D. Tex.) ($22.5 million); *In re FireEye, Inc. Sec. Litig.*, No. 1:14-cv-266866 (Cal. Super. Ct., Santa Clara Cty.) ($10.3 million settlement); *In re Pac. Coast Oil Tr. Sec. Litig.*, No. BC550418 (Cal. Super. Ct., L.A. Cty.) ($7.6 million settlement); and *W. Palm Beach Police Pension Fund v. Cardionet, Inc.*, No. 37-2010-00086836-CU-SL-CTL (Cal. Super. Ct., San Diego Cty.) ($7.25 million settlement).

[4] Current Lead Counsel Appointments: *Golubowski v. Robinhood Mkts., Inc.*, No. 21-cv-9767 (N.D. Cal.); *Marechal v. Acadia Pharms. Inc.*, No. 3:21-cv-762 (S.D. Cal.); *Tan v. Goldman Sachs Group. Inc.*, No. 1:21-cv-08413-PAC (S.D.N.Y.); *Jochims v. Oatly Grp. AB*, No. 21-cv-6360 (S.D.N.Y.); *Garnett v. Wang [RLX Tech., Inc.]*, No. 21-cv-5125 (S.D.N.Y.); *Evans v. Frequency Therapeutics Inc.*, No. 21-cv-10933 (D. Mass.); *Gupta v. Athenex, Inc.*, No. 21-cv-337 (W.D.N.Y.); *Abadilla v. Precigen, Inc.*, No. 5:20-cv-06936 (N.D. Cal.); *Blake v. MacroGenics, Inc.*, No. 8:19-cv-2713 (D. Md.); *Kanugonda v. Funko, Inc.*, No. 2:18-cv-00812 (W.D. Wash.); *Corwin v. ViewRay, Inc.*, No. 1:19-cv-2115 (N.D. Ohio); *Silverberg v. DryShips Inc.*, No. 2:17-cv-04547 (E.D.N.Y.); and *Robinson v. Diana Containerships Inc.*, No. 2:17-cv-06160 (E.D.N.Y.).

In light of the foregoing, the Court should approve the Safemoon Investor Group's selection of Scott+Scott as Lead Counsel for the securities claims. The Court can be assured that by approving the Safemoon Investor Group's choice of counsel, the putative Class will receive the highest caliber of representation.

**5. Scott+Scott Should Be Appointed as Lead Counsel over the Non-Securities Claims**

Scott+Scott has devoted substantial time and resources to pioneer the non-securities legal theories asserted in this litigation and is prepared to advance the necessary resources to prosecute all claims. Appointing lead counsel for the non-securities claims would ensure efficient management of the litigation and the protection of all plaintiffs' interests. *See* MANUAL FOR COMPLEX LITIGATION (Fourth) §10.221 ("The most important [factor in appointing lead counsel] is achieving efficiency and economy without jeopardizing fairness to the parties. . . .").

The criteria for appointing lead counsel for complex non-securities class claims include "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A); *accord In re AT&T Mobility Wireless Data Servs. Tax Litig.*, MDL No. 2147, ECF No. 47 at 2-3 (N.D. Ill. June 23, 2010) (St. Eve, J.) (applying same criteria for lead counsel); *see also* MANUAL FOR COMPLEX LITIGATION, §10.224.

Scott+Scott's substantial efforts were instrumental in developing the claims in this litigation. In appointing lead counsel, courts consistently recognize that such efforts are crucial. *See In re Facebook, Inc., IPO Sec. and Deriv. Litig.*, 288 F.R.D. 26, 44 (S.D.N.Y. 2012). Similarly, courts give significant weight to which firm

investigated and filed the first complaint. *See In re Interest Rate Swaps Antitrust Litig.*, No. 16-MD-2704, 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016).

Here, Scott+Scott attorneys have filed a 97-page, thoroughly investigated complaint that sets forth in painstaking detail the violations of law perpetrated by Defendants herein. Scott+Scott's attorneys have conducted interviews with dozens of investors impacted by Defendants' misconduct in a variety of ways, many of whom ended up retaining Scott+Scott as counsel for this action. *See* Jasnoch Decl., ¶3. In addition, Scott+Scott has interviewed a confidential witness located in London that contacted the firm regarding an attempt by one of the UK Defendants to hire the confidential witness to launder his ill-gotten gains from wrongdoing related to Safemoon. *Id.*, ¶4.

Notably, Scott+Scott has already served certain of the non-U.S. Defendants via the Hague Convention, a costly and time-consuming endeavor on its own. *Id.*, ¶5. Scott+Scott has also conducted significant analysis of Safemoon transactions on the Binance Smart Chain blockchain, the results of which allowed Scott+Scott to plead a compelling case of wrongdoing with highly particularized factual allegations. *Id.*, ¶6. Scott+Scott has a track record of success in similar cases, and the firm's "experience in, and knowledge of, the applicable law" also justify its selection as lead counsel over the non-securities claims. *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 702 (S.D. Fla. 2004). Scott+Scott is a preeminent litigation law firm with attorneys in offices in San Diego, New York City, London, Amsterdam, Berlin, Richmond, Connecticut, and Cleveland, with a concentration in consumer protection, antitrust and securities litigation. Scott+Scott has already been appointed lead counsel in a strikingly similar cryptocurrency-related lawsuit, involving misleading marketing by celebrity promotors. *See In re Ethereum Max Investor Litigation*, No. 2:22-cv-00163-MWF-(SKx) (C.D. Cal) (ECF No. 29). In addition, recently as co-lead counsel, Scott+Scott recovered more than $2.3 billion

in settlements for investors injured by collusion to manipulate foreign exchange rates and benchmark prices. *See In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-CV-7789, ECF No. 925 (S.D.N.Y. Jan. 12, 2018). Mediator Kenneth R. Feinberg concluded that the settlement "represent[ed] some of the finest lawyering toward a negotiated resolution that I have witnessed in my career" and that Scott+Scott attorneys were "superlative, sophisticated, and determined plaintiff's lawyers." *Id.*, ECF No. 926, ¶29.

Scott+Scott is committed to devote the necessary amount of time and money without guarantee of reimbursement and Scott+Scott's proven record of devoting substantial resources to prosecute class actions clearly supports appointment as lead counsel over the non-securities claims. *See* Jasnoch Decl., ¶7. *See In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, ECF No. 67 at 1-2 (D. Kan. Jan. 22, 2015) (appointing lead counsel that will "bring the resources necessary to sustain this litigation").

## IV. CONCLUSION

For all of the foregoing reasons, the Safemoon Investor Group respectfully requests that the Court consolidate the *Merewhauder* and *Blacksher* actions, appoint them as Co-Lead Plaintiffs, approve their selection of Scott+Scott to serve as Lead Counsel for the securities claims, and appoint Scott+Scott as Lead Counsel over the non-securities claims.

DATED: May 9, 2022

Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*s/ John T. Jasnoch*

John T. Jasnoch (CA 281605)
jjasnoch@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508

*Attorney for Lead Plaintiff Movant The Safemoon Investor Group*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2022, I electronically filed the foregoing with the Clerk using CM / ECF, which will send notification via electronic means to all counsel of record.

DATED: May 9, 2022

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*s/ John T. Jasnoch*
John T. Jasnoch

13

MEMORANDUM IN SUPPORT OF MOTION FOR CONSOLIDATION; APPOINTMENT OF CO-LEAD PLAINTIFFS AND LEAD COUNSEL
CASE NOS. 2:22-cv-01108-SVW-MRW; 2:22-CV-01527-SVW-MAR